United States District Court
District of Massachusetts

| | |
|---|---|
| SCOTT SAUNDERS,<br><br>     Plaintiff,<br><br>     v.<br><br>TOWN OF HULL AND RICHARD K. BILLINGS,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action Nos.<br>)   15-11509-NMG<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves a dispute about why plaintiff Scott Saunders ("plaintiff" or "Saunders") was passed over for a promotion in the Police Department of Hull, Massachusetts. Saunders alleges that defendants the Town of Hull and former Police Chief Richard K. Billings ("Billings" and, collectively with the Town of Hull, "defendants") declined to promote him in retaliation for protected speech and thereby violated 42 U.S.C. § 1983 and the Massachusetts Whistleblower Act, M.G.L. c. 149, § 185(d) ("MWA"). Plaintiff also alleges that Chief Billings tortiously interfered with his business relations.

Defendants' motion for summary judgment is pending before the Court. For the reasons that follow, the motion will be,

with respect to 1) the 42 U.S.C. § 1983 claim against the Town of Hull and 2) the MWA claim, allowed but otherwise denied.

**I.   Factual and Procedural Background**

Saunders, who resides in Pembroke, Massachusetts, has been an employee of the Hull Police Department since 2004. Defendant Billings is a resident of Scituate, Massachusetts and was Chief of Police in Hull from 2004 until he retired in January, 2016. Defendant the Town of Hull, Massachusetts is organized under the laws of the Commonwealth as a municipal corporation.

   **A. The Missing Funds and Ensuing Investigation, Legal Actions and No Confidence Vote**

Saunders was elected president of Local 344 of the Brotherhood of Police Officers ("Union") and of the associated organizations, the Hull Police Relief Association and the Hull Police Associates (collectively, "the affiliates"), in March, 2013. That same year, he became aware that about $130,000 was missing from the treasury of the Union and affiliates and unaccounted for in financial records. In December, 2013, he reported the missing funds to the Massachusetts Attorney General's Office ("the AG's Office").

The AG's Office began an investigation concerning the missing funds in March, 2014. In Saunders' view, the Chief was implicated in the investigation because he had served as Treasurer for the Union from 2000 to 2004 and co-signed two

checks from the funds in or around 2010.  The investigation resulted in the criminal indictment of former Sergeant Greg Shea, who left the police department in April, 2014, and an ongoing civil lawsuit against senior officers at the department, including Chief Billings, in Plymouth Superior Court.  Local newspapers extensively covered the missing funds, the investigation and legal actions.

In June, 2014, under Saunders' leadership, the Union approved a vote of no confidence in then-Chief Billings. According to Saunders, the Union's reasons for the vote included, <u>inter</u> <u>alia</u>, the expenditure by Billings of department funds for personal use, failure to provide sufficient training and equipment, reliance on reserve officers who lacked sufficient training and threats to punish officers who issued traffic violation warnings rather than revenue-generating tickets.

### B. The Decision Not to Promote Officer Saunders

There were two vacant sergeant positions in the Hull police department in 2014.  At that time, there were only two officers who had passed the requisite exam and were eligible for promotion, Craig Lepro and Saunders.  While the Board of Selectmen for Hull ("the Board") determines which officers are promoted, the police chief provides recommendations to the Board.  In plaintiff's version of events, former Chief Billings

and the Board declined to promote him because Saunders reported the missing funds to the AG's Office and presided over the no-confidence vote against Billings.

A few days after the vote of no confidence, the Chief set up a meeting with Saunders.  According to Saunders, Billings was "visibly upset" at the meeting and told him that he planned to let his promotion eligibility expire, forcing him to retake the promotion test.  Billings also allegedly held meetings with other officers in which he stated "Saunders is not going to hold me over a barrel" and "there has been a lot of backstabbing going on around here".  Moreover, he purportedly told an acquaintance at a police conference that "[he couldn't] believe [Saunders] did this . . . after all [he] did for him."

The Board certified a shortlist of candidates for the sergeant position which included only Lepro and Saunders.  In accordance with Billings' recommendation, the Board gave both Lepro and Saunders 45-day evaluation periods as acting sergeants.  Both were interviewed for the sergeant position by a team of Massachusetts police chiefs that did not include Billings.  Saunders contends that the team gave him stellar reviews and determined that both he and Lepro were good candidates.  Saunders further submits that the Town of Hull has a consistent practice of promoting eligible officers from the shortlist.  On Billings' recommendation, the Board promoted

-4-

Lepro to fill one of the sergeant vacancies but declined to promote Saunders to fill the other.  Even though he was not promoted, his "45-day period" as acting sergeant has been extended to date.

Saunders took the next sergeant exam but his score was too low to qualify for the remaining sergeant position.  He asserts that by refusing to promote him while he was eligible, defendants knowingly and intentionally prevented him from being promoted.

In April, 2015, Saunders filed suit alleging that 1) both defendants violated 42 U.S.C. § 1983 by unlawfully refusing to promote him in retaliation for protected speech, 2) defendant Town of Hull engaged in actions prohibited by the MWA and 3) defendant Billings tortiously interfered with his business relations with the Town of Hull.  Defendants answered in due course denying all substantive allegations.  In October, 2016, defendants moved for summary judgment on all of the claims against them.  This memorandum and order addresses that motion.

## II.   Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to

show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B. The 42 U.S.C. § 1983 Claim Against Defendant the Town of Hull

Municipalities may not be held liable pursuant to a respondeat superior theory in a 42 U.S.C. § 1983 action. Monell

v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690–91 (1978). Instead, a plaintiff must show that the municipality infringed on his rights through a "policy or custom." City of Canton, Ohio v. Harris, 489 U.S. 378, 385, (1989). Because evidence of a policy or custom is required, a "single incident of misconduct cannot provide the basis for municipal liability under § 1983." Fabiano v. Hopkins, 352 F.3d 447, 452 (1st Cir. 2003)

When the record is viewed in the light most favorable to plaintiff, there is a dearth of evidence that there was a municipal policy or custom that led to the alleged retaliation. Plaintiff himself asserts that it was common practice for eligible officers to be promoted within the Hull Police Department. The record is devoid of facts showing that it was the policy or custom of the Town of Hull to pass over individuals for promotion in retaliation for protected speech. Therefore, defendant the Town of Hull is entitled to summary judgment on the 42 U.S.C. § 1983 claim as a matter of law. Canton, 489 U.S. at 385.

**C. The 42 U.S.C. § 1983 Against Defendant Billings**

An individual's First Amendment rights are not extinguished when he begins to work for the government. City of San Diego, Cal. v. Roe, 543 U.S. 77, 80 (2004). Government employees retain a constitutional right to comment on matters of public

concern. Id. That right, however, has limits, and the government is permitted to place more restrictions on employee speech than non-governmental entities. Id.

Courts undertake a three-step analysis in determining whether a public employee has a valid First Amendment claim against his employer. Fabiano, 352 F.3d at 453. First, the employee must show that the speech touched on a "matter of public concern." Connick v. Myers, 461 U.S. 138, 147 (1983). Second, if the employee succeeds in showing that the speech involved a matter of public concern, the court then examines whether the employee's First Amendment interest in the protected speech outweighs the government's interest in public officials efficiently providing public services. Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois, 391 U.S. 563, 568 (1968). The second step is often referred to as Pickering balancing. Davignon v. Hodgson, 524 F.3d 91, 103-04 (1st Cir. 2008). If the balance of interests tilts in the employee's favor, the Court will proceed to the third step and evaluate whether the plaintiff has shown causation, i.e. that the speech was a "substantial factor" or "motivating factor" in the unfavorable employment decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). Once an employee makes a prima facie showing of causation, the burden shifts to

the employer to show that the employment decision would have been made regardless of the protected speech. Id.

In the present case, plaintiff has demonstrated that genuine issues of material fact persist with respect to each step of the inquiry.

### 1. Matter of Public Concern

#### a. Legal Standard

Speech is a matter of public concern if it addresses a "political, social, or other concern to the community." Davignon, 524 F.3d at 101 (quoting Connick, 461 U.S. at 146). Whether speech is a matter of public concern "must be determined by the content, form, and context of a given statement." Connick, 461 U.S. at 147-48.  The form and context of the speech need not be considered if the speech "would qualify on the basis of its content alone as a matter of inherent public concern." Davignon, 524 F.3d at 101 (internal quotation omitted).

Speech that is meant to "contribute to any public discourse" is more likely to involve public concern than speech that "reflect[s] personal or internal . . . concerns." Fabiano, 352 F.3d at 454 (quoting Mullin v. Town of Fairhaven, 284 F.3d 31, 38 (1st Cir. 2002)) (internal quotations omitted).  If speech "bring[s] to light actual or potential wrongdoing or breach of public trust" by a government official, it may address a matter of public concern. Davignon, 524 F.3d at 102 (quoting

Connick, 461 U.S. at 148).  Although the fact that speech is made in a union context does not render it a matter of inherent public concern, it does "point in the direction of finding that the speech involved a matter of public concern." Id. at 101.

### b. Application

Defendants have conceded, for the purpose of summary judgment, that the speech plaintiff made to the AG's Office involved a matter of public concern to the extent that it addressed the integrity of officers in the police department.

On the other hand, defendants contend that the Union's vote of no confidence did not involve matters of public concern. Defendants also assert that the vote was part of plaintiff's official duties as an officer and thus falls outside of First Amendment protections.  Plaintiff responds that the no-confidence vote addressed matters of public concern because it was based on allegations that Chief Billings misappropriated funds for his own use, permitted untrained officers to patrol the streets and threatened officers who were not writing enough traffic citations to generate revenue.  Plaintiff further replies that the limited exception that renders speech made pursuant to official government duties unprotected does not apply in a union context.

First, with respect to defendants' contention that the vote of no confidence does not involve matters of public concern, a

-10-

genuine issue of material fact persists. The parties agree that the vote of no confidence occurred in a union setting which suggests a finding that the speech involved a matter of public concern. Davignon, 524 F.3d at 101. While the parties further agree that the no-confidence vote was a simple yes-no vote, they disagree on the content of the speech. Plaintiff asserts that the list of reasons for the no-confidence vote included misuse of funds and putting untrained officers on the streets, both of which would likely qualify as matters of public concern. Fabiano, 352 F.3d at 454. On the other hand, defendants contend that the list also included complaints about station air quality and the ongoing use of reserve officers, issues more closely related to internal management of the police department. Id. Accordingly, genuine issues of material fact remain as to whether the list of reasons involved matters of public concern.

Defendants' second contention, that the speech at issue was part of plaintiff's official duties, is without merit. Although statements of public employees made in accordance with their official duties are not protected by the First Amendment, Decotiis v. Whittemore, 635 F.3d 22, 30 (1st Cir. 2011), there is no indication from the record that Saunders was required to hold the vote of no confidence as part of his duties as a police officer.

**2. <u>Pickering</u> Balancing**

**a. Legal Standard**

The second step of the analysis involves a fact-intensive weighing of interests. <u>Davignon</u> v. 524 F.3d at 104.  When applying the <u>Pickering</u> test, courts

> balance the strength of the relevant constitutional interests against the countervailing governmental interest in promoting efficient performance of the City's public service

<u>Fabiano</u>, 352 F.3d at 455.  Courts consider whether the speech "disrupted the day-to-day functioning of [the] workplace," <u>id.</u> at 456, by occurring during business hours, at the place of employment or requiring individuals to leave their place of employment. <u>Davignon</u>, 524 F.3d at 104.

**b. Application**

According to defendants, plaintiff's constitutional interest in the vote of no-confidence is outweighed by the government's interest in efficiency.  Plaintiff responds that the vote occurred outside of his working hours and place of employment and that there is no evidence that it disrupted the police department. <u>Id.</u> at 104.  Viewing disputed facts in the light most favorable to plaintiff, a reasonable jury could find that the balance leans in favor of his position.  Consequently, summary judgment based on the balance of interests is not warranted.

### 3. Causation

#### a. Legal Standard

To demonstrate that his speech was protected, the government employee must also meet the third prong of the test by showing causation. Davignon, 524 F.3d at 106. A plaintiff may prove causation by demonstrating that the protected speech was a "substantial or motivating factor" in the adverse employment decision. Id. (quoting Mt. Healthy, 429 U.S. at 287). The plaintiff's burden to prove causation can be met with circumstantial evidence. Id. For instance, the timing of the employment decision or evidence that the plaintiff and defendant landed on opposite sides of a highly charged debate both support findings of causation. See id.; Welch, 542 F.3d at 940–41.

#### b. Application

The parties disagree on then-Chief Billings' motivation in declining to recommend plaintiff for promotion. According to defendants, the Chief's recommendation of Saunders for the temporary position of acting sergeant and praise of him in a letter to the Board demonstrate that he did not attempt to retaliate against plaintiff for the speech at issue. Plaintiff responds that after the no-confidence vote, the Chief told him that his eligibility for a promotion would expire and that the Chief would personally make sure that plaintiff was never promoted. Moreover, Saunders contends that Billings'

conspicuous decision not to recommend him to the Board for promotion weighed heavily on the Board's decision.  Given those disagreements and the fact that plaintiff and defendant Billings were on opposite sides of a contentious, highly publicized debate, when viewed in the light most favorable to plaintiff, summary judgment on the grounds of causation is precluded. Davignon, 524 F.3d at 106; Welch, 542 F.3d at 940–41.

Defendants further submit that summary judgment is warranted because being passed over for a promotion is not an adverse employment decision.  On the contrary, adverse employment decisions involve a broad category of actions such as "denials of promotion, transfers and rehires[.]" Id. at 936 (citing Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990)).

In sum, because genuine issues of material fact persist with respect to all three prongs of the test for determining whether a public employee's speech is constitutionally protected, summary judgment on the 42 U.S.C. § 1983 claim against defendant Billings will be denied.

**D. MWA Claim Against Defendant Town of Hull**

**1. Legal Standard**

The MWA provides relief if municipalities retaliate against employees' protected behavior.  Chamberlin v. Town of Stoughton,

601 F.3d 25, 31 (1st Cir. 2010). To succeed under that statute, a plaintiff must demonstrate

> that he engaged in protected activity and his participation in that activity played a substantial or motivating part in the retaliatory action.

Pierce v. Cotuit Fire Dist., 741 F.3d 295, 303 (1st Cir. 2014) (internal quotation omitted). Once the plaintiff makes that initial showing, the employer may make a counter-showing of a "legitimate, nonretaliatory reason" for the employment decision. Id. (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 262 (1st Cir. 1999)). Upon such a showing, the burden returns to the plaintiff to demonstrate that the purportedly legitimate reason for the action is pretextual. Id.

The MWA generally requires that employees give their employer written notice of the alleged retaliation before reporting it to a public body. The statute defines "public bodies" to include "any federal, state, or local judiciary." Dirrane v. Brookline Police Dep't, 315 F.3d 65, 73 (1st Cir. 2002) (quoting M.G.L. c. 149, § 185(a)(3)). Because courts are public bodies for the purpose of the statute, the First Circuit Court of Appeals has determined that there is a "hard and fast rule" requiring written notice before a lawsuit is filed pursuant to the MWA. Id.

There are three scenarios in which a plaintiff is exempt from the written notice requirement:

-15-

> [I]f [the employee]: (A) is reasonably certain that the activity, policy or practice is known to one or more supervisors of the employer and the situation is emergency in nature; (B) reasonably fears physical harm as a result of the disclosure provided; or (C) makes the disclosure to a public body . . . for the purpose of providing evidence of . . . a crime.

Wagner v. City of Holyoke, 241 F. Supp. 2d 78, 97 (D. Mass. 2003), aff'd sub nom. Wagner v. City Of Holyoke, Massachusetts, 404 F.3d 504 (1st Cir. 2005) (quoting Dirrane, 315 F.3d at 75).

### 2. Analysis

Defendants contend that summary judgment is warranted because plaintiff failed to comply with the notice provisions before filing suit. Plaintiff responds that the speech at issue is exempt from the notice requirement because it involved reporting suspected criminal conduct to the AG's Office. Plaintiff does not, however, dispute the fact that no notice was provided.

Because plaintiff concedes that he did not provide written notice before filing suit, even viewing the disputed facts in his favor, defendant is entitled to judgment as a matter of law on the MWA claim. Although the disclosure of possible criminal activity to the AG's Office was exempt from the notice requirement, plaintiff was still required to file written notice with his employer before reporting the alleged misconduct to the federal judiciary which is considered a public body under the

-16-

MWA. <u>Wagner</u>, 241 F. Supp. 2d at 98–99.  Accordingly, with respect to the MWA claim, defendants' motion for summary judgment will be allowed.

### E. Tortious Interference with Advantageous Business Relations Claim Against Defendant Billings

#### 1. Legal Standard

To succeed on a claim of tortious interference with advantage business relations under Massachusetts law, a plaintiff must prove

> (1) that she had a business relationship, (2) that the defendant knew of this relationship, (3) that the defendant intentionally and maliciously interfered with the relationship, and (4) that the defendant's actions harmed her.

<u>Zimmerman</u> v. <u>Direct Fed. Credit Union</u>, 262 F.3d 70, 76 (1st Cir. 2001) (citing <u>Comey</u> v. <u>Hill</u>, 387 Mass. 11, 19 (1982)).  Because a tortious interference claim is usually not permitted against a party to a contract, employees are typically barred from bringing tortious interference claims against their employers for purported contractual violations. <u>Welch</u>, 542 F.3d at 944.

An employee may, however, pursue a claim against a supervisor for tortious interference if "actual malice," defined as "a spiteful, malignant purpose, unrelated to the legitimate corporate interest" is the "controlling factor" in the alleged tortious interference. <u>Id.</u> (citations and internal quotations omitted).  For instance, the decision of a police chief to pass

over an officer for a specialty appointment may, if it is the result of actual malice, provide the basis for a tortious interference claim. Id.

### 2. Analysis

Defendants contend that there is no evidence that Chief Billings intentionally induced the Board not to promote plaintiff to sergeant. Defendants further submit that because plaintiff has been working as acting sergeant and there is no emotional distress claim, he has not suffered damages. Plaintiff responds that the fact that defendant Billings declined to recommend him, along with the Chief's statement that he would make sure Saunders never got promoted, show that actual malice was a controlling factor in the purported tortuous interference. Plaintiff further responds that damages are shown because Saunders will inevitably be returned to a lower position and pay grade and is not accruing seniority in the sergeant position.

Viewing the facts in the light most favorable to plaintiff, genuine issues of material fact exist with respect to whether the Chief acted with actual malice in declining to recommend Saunders for promotion. See Welch, 542 F.3d at 944. Moreover, plaintiff's alleged inevitable return to a lower pay grade and inability to accrue seniority, when viewed in the light most favorable to him, preserve genuine issues of material fact with

respect to damages. See Zimmerman, 262 F.3d at 76. Consequently, summary judgment on the tortious interference claim will be denied.

### ORDER

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 25) is, with respect to 1) the 42 U.S.C. § 1983 claim against the Town of Hull and 2) the Massachusetts Whistleblower Act claim, **ALLOWED**, but is otherwise **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton \_
Nathaniel M. Gorton
United States District Judge

Dated January 11, 2017